**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-7176**

WILLIAM YOUNG,

                Petitioner – Appellant,

v.

B. M. ANTONELLI, Warden,

                Respondent – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Rock Hill.  Cameron McGowan Currie, Senior District Judge.  (0:18-cv-1010-CMC)

Argued:  October 26, 2020                            Decided:  December 10, 2020

Before WYNN, HARRIS, and QUATTLEBAUM, Circuit Judges.

Vacated and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED:**  Emily Deck Harrill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Robert Frank Daley, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:** Sherri A. Lydon, United States Attorney, William K. Witherspoon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

The question before us is whether William Anthony Young is entitled to habeas relief under 28 U.S.C. § 2241. Young seeks relief from his sentence—which was enhanced based on the "death results" provision of the United States Sentencing Guidelines ("Sentencing Guidelines" or "Guidelines")—based on the Supreme Court's decision in *Burrage v. United States*, 571 U.S. 204 (2014). Although *Burrage* interpreted the "death results" provision of 21 U.S.C. § 841(b)(1), Young contends the decision applies as well to the "death results" Sentencing Guidelines provision at U.S.S.G. § 2D1.1(a)(1). Accordingly, he argues he meets the four-part test for relief under § 2241 from our decision in *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018). The district court determined it lacked jurisdiction over Young's petition, concluding that because *Burrage* had not previously been applied to the Sentencing Guidelines, Young's invocation of *Burrage* was premature. We agree with the district court's analysis. At the time of its decision, neither the Supreme Court nor this Circuit had applied *Burrage*'s statutory interpretation to the Sentencing Guidelines. But we now conclude that *Burrage*'s interpretation does, in fact, apply to the "death results" provision of the Sentencing Guidelines, at least those in effect prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Thus, we vacate and remand for proceedings consistent with this opinion.

## I.

Dana Parks died after using crack cocaine and heroin that she purchased from Young. When Young was arrested, law enforcement discovered crack cocaine in his

2

possession. A federal grand jury then indicted Young for conspiring to possess with intent to distribute and conspiring to distribute five grams or more of crack cocaine. *See* 21 U.S.C. §§ 841(a)(1) and 846. The government filed an information pursuant to 21 U.S.C. § 851 notifying Young he was subject to enhanced penalties based on prior convictions for two qualifying drug offenses.

Young pled guilty in August 2002. At the plea hearing, the government indicated that it had not decided whether to charge Young in another indictment with the death of the victim or whether to only use that circumstance to enhance his sentence. [J.A. 177–78.] Later, at sentencing, the government acknowledged that there was an issue concerning the application of the enhancement because the government's pathologist was unable to determine whether the death resulted from crack cocaine or heroin. [*See* J.A. 188–89.] But as Young's attorney also acknowledged at sentencing, despite that issue, the government could likely obtain an indictment for both crack cocaine and heroin, for which Young would face a mandatory life sentence if convicted. [J.A. 188–89.] For that reason, Young appears to have waived his objection about the application of the enhancement.[1] Ultimately, the district court sentenced Young by applying the Sentencing Guidelines' "death results" enhancement at U.S.S.G. § 2D1.1(a)(1). With a total offense level of 40 after reductions for acceptance of responsibility and a criminal history category of III,

---

[1] The parties dispute the scope of the waiver. The district court declined to rule on the scope of the waiver because it determined it did not have jurisdiction. Therefore, we need not address that issue, leaving it for the district court on remand.

Young faced a sentencing range of 360 months to life imprisonment.[2] The district court sentenced him to 360 months in May 2003.

Although Young did not directly appeal, he filed several unsuccessful 28 U.S.C. § 2255 motions. He then filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 in the District of South Carolina, arguing that his sentence was calculated incorrectly in light of *Burrage*. B.M. Antonelli, the Warden of FCI Williamsburg, South Carolina, (the "Warden") moved to dismiss arguing that Young did not satisfy *Wheeler*'s requirements because *Burrage* had not been made retroactive on collateral review. Ultimately, the district court dismissed Young's petition for lack of jurisdiction, concluding that because *Burrage* has not been held to apply to the Sentencing Guidelines, Young's invocation of *Burrage* was premature under *Wheeler*.

II.

Whether Young may challenge his sentence under § 2241 is a question of law we review de novo. *Lester v. Flournoy*, 909 F.3d 708, 710 (4th Cir. 2018). "As a threshold matter, it is well established that defendants convicted in federal court are obliged to seek habeas relief from their convictions and sentences through § 2255." *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010). But once a prisoner has filed one unsuccessful § 2255 motion, the circumstances under which the federal prisoner can file a "second or

---

[2] At the time of sentencing, the statutory penalty for the charged offense was ten years to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(B) (Supp. 2002).

4

successive" petition are very limited. *Lester*, 909 F.3d at 710. Under 28 U.S.C. § 2255(h), a petitioner may file a successive § 2255 petition in the district court only if authorized by the Court of Appeals. And obtaining that authorization requires a prima facia showing of "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). The parties agree that Young can satisfy neither of these two avenues for a successive § 2255 petition.

Despite that, Congress provided one exception to the general rule that federal prisoners must seek habeas relief under § 2255. Under § 2255(e), the so-called "savings clause," a federal prisoner may seek a writ of habeas corpus under § 2241 if it "appears that the [§ 2255] remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *United States v. Poole*, 531 F.3d 263, 270 (4th Cir. 2008). In *Wheeler*, we developed a four-part test outlining when the savings clause may be used to challenge "the length of a criminal sentence for an otherwise valid conviction." *Farkas v. Butner,* 972 F.3d 548, 560 (4th Cir. 2020); *Lester*, 909 F.3d at 712 (*Wheeler* "outlined when the savings clause may be used to challenge erroneous sentences."). There, we held § 2255 is inadequate and ineffective to test the legality of a sentence when:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence;

(2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review;

(3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and

(4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Wheeler*, 886 F.3d at 429 (paragraph breaks added).

III.

Young argues on appeal that he meets all four *Wheeler* prongs. Thus, he contends the district court erred in dismissing his petition. The Warden does not contest Young's ability to satisfy prongs 1, 3 and 4.[3] Instead, he argues Young cannot satisfy the second prong. Any change in the substantive law does not apply to Young, according to the Warden, because *Burrage* addressed a statutory provision, not a Guidelines enhancement.

We begin with *Burrage*. There, the Supreme Court addressed the Controlled Substances Act's 20-year mandatory minimum imposed on a defendant who unlawfully distributed a Schedule I or II drug when "death or serious bodily injury results from the use of such substance." *Burrage*, 571 U.S. at 206 (quoting 21 U.S.C. § 841(a)(1), (b)(1)(A)–(C)). Specifically, the Court considered, on direct review, "whether the mandatory-minimum provision applies when use of a covered drug supplied by the defendant contributes to, but is not a but-for cause of, the victim's death or injury." *Id.* It concluded

---

[3] Because the Warden does not challenge Young's position on prongs 1,3 and 4, we restrict our analysis to prong 2.

that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 218–19. In so doing, the Court did not address whether its decision applied retroactively or to the corollary enhancements found in the Sentencing Guidelines at U.S.S.G. § 2D1.1(a)(1).

Although *Burrage* changed the law as to a statutory provision, it did not do so as to the corollary Sentencing Guidelines. Nor has the Supreme Court or this Court done so since. The absence of Supreme Court or Fourth Circuit authority on whether *Burrage* applies to the "death results" Sentencing Guidelines is important to our *Wheeler* analysis. To repeat, *Wheeler*'s second prong requires that "subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review." *Wheeler*, 886 F.3d at 429. And "the aforementioned settled substantive law," that must have "changed" is explained in prong one to be the "settled law of this circuit or the Supreme Court." *Id.* If neither the Supreme Court nor this Court had applied *Burrage* to the Guidelines, the district court could not make that change on its own. Therefore, the district court correctly concluded that, at the time of its decision, the invocation of *Burrage* to the Guidelines was premature.

But we are in a different position. And with this issue before us, we now examine whether *Burrage*'s statutory interpretation applies to the "death results" Sentencing Guidelines provision and whether it should be done retroactively on collateral review.

7

We first address the retroactivity question. The Warden's position makes our decision easy. He concedes that if applicable in the Guidelines context, *Burrage* would apply retroactively on collateral review. [4] [J.A. 142 n.3.] With that concession, we need not go any further.

Therefore, we next consider whether *Burrage* applies to the Guidelines. We conclude that it does. For starters, the language of U.S.S.G. § 2D1.1 significantly parallels the language of § 841(b)(1) that *Burrage* interpreted and that contains the statutory penalty for Young's charged offense. *See United States v. Patterson*, 38 F.3d 139, 144 n.5 (4th Cir. 1994) ("Section 2D1.1 also contains a sentence enhancement provision that *parallels* [21 U.S.C.] § 841(b)(1)(C) and applies when a defendant is convicted under § 841(b)(1)(C) and death results from the use of controlled substances. U.S.S.G. § 2D1.1(a)(2)"). Section 841(b)(1) allows for an enhanced statutory sentence if a person commits a violation "after

---

[4] The Fifth, Sixth, Seventh and Eighth Circuit Courts of Appeals have held that the rule is retroactive. *See Harrington v. Ormond*, 900 F.3d 246, 249 (6th Cir. 2018) ("It is also clear that *Burrage* is retroactive, as the Government commendably concedes. Substantive decisions that 'narrow the scope of a criminal statute by interpreting its terms' apply retroactively to cases on collateral review." (citations omitted)); *Santillana v. Upton*, 846 F.3d 779, 784 (5th Cir. 2017) ("In sum, as a substantive decision narrowing the scope [of] a federal criminal statute, *Burrage* applies retroactively to cases on collateral review."); *Gaylord v. United States*, 829 F.3d 500, 505 (7th Cir. 2016) ("[T]he government acknowledges that *Burrage* narrowed the scope of the 'death results' enhancement of § 841(b)(1)(C) and thus applies retroactively."); *Krieger v. United States*, 842 F.3d 490, 497–99 (7th Cir. 2016) (collecting cases in which the Government conceded that *Burrage* announces a substantive rule that applies retroactively on collateral review); *Ragland v. United States*, 784 F.3d 1213, 1214 (8th Cir. 2015) (recognizing government's concession that *Burrage* applies retroactively). Until today, we have not done so in a published decision.

a prior conviction for a felony drug offense . . . if death or serious bodily injury results from the use of such substance . . . ." 21 U.S.C. § 841(b)(1)(B) (Supp. 2002). And under the 2002 Guidelines in effect at the time of sentencing, U.S.S.G. § 2D1.1(a)(1) provided that a base level of 43 applies "if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense . . . ." U.S.S.G. § 2D1.1(a)(1) (2002).

Because of that parallel language, other courts have recognized that the Guidelines and statute mirror each other in several key respects. "[B]oth the guideline provision and the statute contemplate sentencing a defendant to a term of life imprisonment if he has committed a controlled substance offense that resulted in death or serious bodily injury and has a prior conviction." *United States v. Johnson*, 706 F.3d 728, 731 (6th Cir. 2013) (noting that "USSG § 2D1.1(a)(1) merely reinforces the enhanced penalty mandated by statute"). We find the Sixth Circuit's reasoning persuasive. We see no reason to treat the Guidelines differently from the statute, especially since they were mandatory when applied to Young.

Further, although our Circuit has not previously addressed this issue, our decision today is consistent with several of our other decisions. First, in *Lester*, the defendant was deemed a career offender under the then-mandatory Sentencing Guidelines subjecting him to a sentencing enhancement based on that classification. The question on appeal was whether Lester could challenge his sentence under the savings clause of 28 U.S.C. § 2255 by pursuing a petition under § 2241. In vacating his sentence and allowing a § 2241 petition

9

to be heard on the merits, we relied on *Chambers v. United States*, 555 U.S. 122, 123 (2009), where the Supreme Court held that a defendant's prior offense did not qualify as a violent felony under the Armed Career Criminal Act. *Lester*, 909 F.3d at 716. We did so even though *Chambers* involved a statute, the ACCA, while Lester's sentence involved the Guidelines. To be fair, while today we consider *Wheeler*'s second prong, *Lester* focused on *Wheeler*'s fourth prong as there was no dispute about the first three. Even so, while *Lester* does not control our decision, it is consistent with our views here.

Further, in *In re Hubbard*, 825 F.3d 225, 235 (4th Cir. 2016), we authorized a successive § 2255 petition based on *Johnson v. United States*, 576 U.S. 591 (2015), concluding that *Johnson* applied retroactively. We also held that "although available sentences are technically controlled by statute, the Sentencing Guidelines hardly represent a mere suggestion to courts about the proper sentences defendants should receive." *Id.* We noted this was particularly the case when the petitioner was sentenced before the Supreme Court's *Booker* decision made the Sentencing Guidelines advisory. *Id.* While *In re Hubbard* pre-dated *Wheeler*, it nevertheless applied the Supreme Court's reasoning about a statute to the Sentencing Guidelines. And like *In re Hubbard*, Young's sentencing took place before *Booker* so the Guidelines were mandatory.

We, therefore, conclude that *Burrage*'s statutory interpretation applies equally to § 2D1.1(a) of the Sentencing Guidelines in place prior to *Booker*.

10

## IV.

For the above stated reasons, while we find no fault with the district court's dismissal of Young's petition, based on our decision today, we vacate and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*