**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-6972**

JOHN FORREST HAM, JR.,

                    Petitioner – Appellant,

         v.

WARDEN M. BRECKON,

                    Respondent – Appellee.

------------------------------

KATHRYN MARGARET BARBER, Esq.,

                    Court-Assigned Amicus Counsel.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Glen E. Conrad, Senior District Judge.  (7:18-cv-00649-GEC-PMS)

Argued:  January 28, 2021                    Decided:  April 20, 2021

Before AGEE, THACKER, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion.  Judge Thacker wrote the opinion, in which Judge Agee and Judge Quattlebaum joined.

**ARGUED:**  Lisa M. Lorish, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.  Kathryn Margaret

Barber, MCGUIREWOODS LLP, Richmond, Virginia, Court-Assigned Amicus Counsel. **ON BRIEF:** Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant. Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. Matthew A. Fitzgerald, MCGUIREWOODS LLP, Richmond, Virginia, Court-Assigned Amicus Counsel.

THACKER, Circuit Judge:

John Forrest Ham, Jr. ("Petitioner") appeals the district court's dismissal of his 28 U.S.C. § 2241 habeas petition for lack of jurisdiction. He claims that, pursuant to *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), the district court was permitted to address the merits of his petition. *Wheeler* provides a four-part test for a federal prisoner who wishes to seek relief from an allegedly defective sentence, where remedy by a 28 U.S.C. § 2255 motion would be "inadequate or ineffective." 28 U.S.C. § 2255(e) (commonly known as the "savings clause").[1] Relevant to this appeal, *Wheeler* requires that, in order for a district court to possess jurisdiction to consider a § 2241 petition pursuant to the savings clause, a petitioner must demonstrate a retroactive change in settled substantive law subsequent to his direct appeal and first § 2255 motion.

Petitioner claims that in his case, *Mathis v. United States*, 136 S. Ct. 2243 (2016), satisfies this requirement. Specifically, he argues *Mathis* changed "well-settled substantive law" regarding how a sentencing court should apply the categorical approach.[2] Pet'r's Br.

---

[1] "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).

[2] The categorical approach, as applied in cases such as Petitioner's, is an analytical sentencing method by which courts determine whether the elements of a defendant's prior conviction fit within a generic definition of a federal crime. Using this approach, courts can decide if, when, and how a defendant should receive an enhanced sentence. The modified categorical approach allows courts to look behind the elements to documents

3

The district court rejected this argument, and we affirm. To the extent Petitioner contends *Mathis* changed settled substantive Supreme Court law, *Mathis* itself made clear that it was not changing, but rather clarifying, the law. To the extent Petitioner contends *Mathis* changed settled Fourth Circuit law, for the reasons that follow, we are not convinced. Therefore, Petitioner cannot meet the high bar to pass through the savings clause and have his § 2241 petition heard on the merits.

I.

A.

Procedural History

1.

Petitioner's Plea and Sentencing

On May 12, 2010, Petitioner pled guilty in the United States District Court for the District of South Carolina ("DSC") to (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), with three prior convictions for a violent felony or a serious drug offense, *see id.* § 924(e)(1) (the Armed Career Criminal Act ("ACCA")); (2) carjacking, in violation of 18 U.S.C. § 2119(1); and (3) possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1).

Petitioner was sentenced on September 10, 2010, to a total term of 319 months, consisting of 235 months on the ACCA count and 180 months on the carjacking count, to

---

underlying the prior conviction, such as the charging papers and jury instructions, in certain circumstances.

run concurrently. On the § 924(c) count, Petitioner received a sentence of 84 months, to run consecutively to the ACCA and carjacking sentences. By his § 2241 petition, Petitioner seeks to challenge his sentencing enhancement pursuant to the ACCA, which provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a ***violent felony*** or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that . . . ***is burglary*** . . . .

18 U.S.C. § 924(e)(1), (e)(2)(B)(ii) (emphases supplied). Applying the modified categorical approach, the DSC sentenced Petitioner to an enhanced sentence based in part on his prior conviction for South Carolina third-degree burglary,[3] which provides, "A person is guilty of burglary in the third degree if the person enters a ***building*** without consent and with intent to commit a crime therein." S.C. Code Ann. § 16-11-313(A) (emphasis supplied). "Building" is defined to include "any structure, vehicle, watercraft, or aircraft . . . [w]here any person lodges or lives . . . people assemble. . . or where goods are stored." *Id.* § 16-11-310(1). This court affirmed Petitioner's conviction and sentence on July 12, 2011. *See United States v. Ham*, 438 F. App'x 183 (4th Cir. 2011) (per curiam).

---

[3] The DSC also relied on Petitioner's prior conviction for South Carolina assault and battery of a high and aggravated nature ("ABHAN") and a drug offense. The validity of these prior convictions is not at issue in this appeal.

2.

Post-Conviction Litigation

a.

In July 2012, Petitioner filed his first § 2255 motion to vacate his sentence, raising several ineffective assistance of counsel claims, including a claim his attorney should have argued that South Carolina third degree burglary "is not an armed career criminal [p]redicate." Mot. at 6, *United States v. Ham*, No. 6:10-cr-46 (D.S.C. filed July 5, 2012), ECF No. 44. While that motion was pending, the Supreme Court decided *Descamps v. United States*, 570 U.S. 254 (2013), holding that courts *may not* apply the modified categorical approach to an ACCA sentencing when the offense of conviction has a single, indivisible set of elements.

On August 9, 2013, seven weeks after *Descamps* was decided, the DSC dismissed Petitioner's first § 2255 motion as without merit. In addressing the ineffective assistance claim grounded in the ACCA, the DSC explained that trial counsel was not ineffective for failing to argue that South Carolina third degree burglary is not an ACCA predicate because "there was no basis for [Petitioner's] defense counsel to object." *United States v. Ham*, No. 6:10-cr-46, 2013 WL 4048988, at *3 (D.S.C. Aug. 9, 2013). The DSC explained, "[B]ecause some states broadly define burglary to include places other than buildings, the categorical approach may be modified to 'permit the sentencing court to go beyond the mere fact of conviction.'" *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990)). The DSC also cited this court's unpublished decision in *United States v. Hickman*, which held that when analyzing South Carolina third degree burglary, the court "may rely on a

6

prepared presentence investigations report . . . to determine whether a prior crime qualifies as a predicate offense under the ACCA." *Id.* (quoting *Hickman*, 358 F. App'x 488, 489 (4th Cir. 2009) (per curiam)). It then looked to Petitioner's PSR and saw that Petitioner's "state burglary conviction was committed when [Petitioner] forced open the front door of [the victim's] residence and entered the residence"; therefore, the offense constituted a generic burglary for purposes of the ACCA. *Id.* The DSC did not cite *Descamps*, and Petitioner did not appeal.

b.

Three years later, the Supreme Court decided *Mathis v. United States*, 136 S. Ct. 2243 (2016). Petitioner thereafter filed a pro se § 2241 petition in the district of his confinement, the United States District Court for the Western District of Virginia ("WDVA"), arguing that pursuant to *Mathis*, and employing the categorical approach (not modified), South Carolina third degree burglary is not a violent felony. Pet. at 2, *Ham v. Breckon*, No. 7:17-cv-295 (W.D. Va. June 23, 2017), ECF No. 1. The WDVA construed the § 2241 petition as a § 2255 motion and transferred it to the DSC, the district of sentencing. The WDVA also opined that § 2241 relief was not available because *Mathis* "had no effect on the criminality of [Petitioner's] federal offense conduct," and this court had not yet concluded that a prisoner could challenge the legality of his sentence via the savings clause. Mem. Op. at 2, *id.* (W.D. Va. June 27, 2017), ECF No. 3.

On March 2, 2018, the DSC dismissed the transferred § 2255 motion as successive. Later that same month, we decided *United States v. Wheeler*, setting forth a four-part test

for prisoners wishing to the challenge the legality of their sentence pursuant to the savings clause of § 2255(e). *See* 886 F.3d 415 (4th Cir. 2018). The test requires:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Id.* at 429.

Petitioner promptly filed a motion to alter or amend in the DSC, asking that court to reassess its order dismissing his § 2255 motion as successive in light of *Wheeler*. On January 7, 2019, the DSC denied the motion, concluding "[Petitioner] cannot meet the second prong of *Wheeler*" because Petitioner "d[id] not rely on a retroactively applicable change in substantive law." Order at 2–3, No. 6:10-cr-46 (D.S.C. Jan. 7, 2018), ECF No. 131. Petitioner appealed, and we denied a certificate of appealability and dismissed the appeal. *See United States v. Ham*, 773 F. App'x 746 (4th Cir. 2019) (per curiam).

While the motion to reconsider was pending in the DSC, on December 31, 2018, Petitioner filed the instant pro se § 2241 petition in the WDVA, alleging that he could meet *Wheeler*'s four prongs because his sentencing enhancement was misapplied "in light of subsequent caselaw establishing that [his] predicate offenses no longer qualify." J.A. 33.[4]

---

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

The Government responded to Petitioner's § 2241 petition, agreeing that Petitioner was entitled to relief.

Nonetheless, the WDVA dismissed the § 2241 petition for lack of jurisdiction. Like the DSC, the WDVA concluded Petitioner did not meet prong two of the *Wheeler* test, reasoning that his § 2241 petition "does not rely on a retroactively applicable change in substantive law subsequent to his direct appeal and first § 2255 motion." J.A. 67 (internal quotation marks omitted). Specifically, the WDVA explained that many courts -- including this court in unpublished decisions -- "have found that *Mathis* did *not change* settled substantive law." J.A. 68 (emphasis in original). In so holding, the WDVA cited our unpublished decision in *Brooks v. Bragg*, in which we stated, "*Descamps* and *Mathis* did not announce a retroactively applicable substantive change in the law. Rather, these cases reiterated and clarified the application of the categorical approach or the modified categorical approach, to determine whether prior convictions qualify as predicates for recidivist enhancements." 735 F. App'x 108, 109 (4th Cir. 2018) (per curiam); *see also Muhammad v. Wilson*, 715 F. App'x 251, 252 (4th Cir. 2017) (per curiam) ("*Descamps* and *Mathis* did not announce a substantive change to the law."). Thus, the WDVA determined that Petitioner "has simply failed to make the requisite showing" under *Wheeler*. J.A. 69.

c.

Petitioner timely noted this appeal from the WDVA's dismissal of his § 2241 petition. Because the Government and Petitioner agree that Petitioner is entitled to pass through the savings clause, we appointed amicus counsel to argue the position of the district

9

court. Whether a petitioner satisfies the requirements of the savings clause is a jurisdictional question that we review de novo. *See Wheeler*, 886 F.3d at 426; *Young v. Antonelli*, 982 F.3d 914, 917 (4th Cir. 2020).

B.

Legal Landscape -- *Mathis* and the Categorical Approach

Because Petitioner bases his *Wheeler* claim on *Mathis*, we start with an overview of that decision and its place in a succession of Supreme Court cases addressing the categorical approach.

1.

*Taylor v. United States*

In the seminal case of *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court held that generally, in determining whether an offense qualifies as a "violent felony" under the ACCA, a federal sentencing court "must look only to the statutory definition" -- i.e., the elements of a defendant's prior offenses, and not to "the particular facts underlying those convictions." 495 U.S. at 600. If the definition of the prior offense sweeps more broadly than the generic offense, then the prior offense fails to qualify as an ACCA predicate. *See id.* at 599. The Supreme Court referred to this framework as the "formal categorical approach." *Id.* at 600. *Taylor* also recognized, however, that this approach "may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the generic offense]." *Id.* at 602. In such a case, *Taylor* explained a court may look beyond the

statutory elements to the "charging paper and jury instructions" to determine whether an offense qualifies as a violent felony. *Id.*

This process of looking behind statutory elements of the crime became known as the "modified categorical approach." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007) (quoting *Conteh v. Gonzales*, 461 F.3d 45, 54 (1st Cir. 2006)).

2.

### *Descamps v. United States*

In 2013, the Supreme Court clarified that the modified categorical approach does not apply to statutes containing a single, indivisible set of elements. *See Descamps*, 570 U.S. at 258. Rather, the modified categorical approach only applies when an offense is divisible with alternative elements. *See id.* at 260. As an example, the Court explained that a statute that sets forth divisible, alternative elements would be a "burglary [statute that] involves entry into a building *or* an automobile." *Id.* at 257 (emphasis in original).

3.

### *Mathis v. United States*

Finally, in *Mathis*, the Supreme Court relied on *Taylor* and *Descamps* to clarify that where an offense of conviction enumerates various alternative factual means of satisfying one element of the crime, courts may not use the modified categorical approach. *See* 136 S. Ct. at 2248–49. Specifically, the Court addressed Iowa burglary, which prohibited unprivileged entry into an "occupied structure" -- defined to include "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place." Iowa Code § 702.12. The Court explained the Iowa statute did not list "alternative

11

elements" but rather, "alternative ways of satisfying a single locational element." *Mathis*, 136 S. Ct. at 2250. In other words, "occupied structure" was the element, and the different variances of "occupied structure" were merely ways to satisfy that element. Thus, the Iowa statute was not divisible, and the modified categorical approach was not appropriate. Using the categorical approach, then, the Supreme Court determined that because Iowa burglary applied to burglary of "any building, structure, *or land, water, or air vehicle*," *id.* (emphasis supplied), the Iowa statute covered a broader swath of conduct than the generic burglary offense, defined in *Taylor* as unlawful entry into a "building or other structure," *id.* (quoting *Taylor*, 495 U.S. at 598). Therefore, Iowa burglary could not serve as an ACCA predicate.

Importantly for the case at hand, *Mathis* made clear that it was *not* breaking new ground or changing any of its prior decisions regarding how to apply the categorical approach. Indeed, *Mathis* begins by noting, "*For more than 25 years*, our decisions have held that the prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense." *Mathis*, 136 S. Ct. at 2247 (emphasis supplied). It then declined to make an "exception" to this established rule for the situation in which a defendant is convicted under a statute "that lists multiple, alternative means of satisfying one (or more) of its elements." *Id.* at 2247–48. *Mathis* did not amend any elements of any state burglary statutes, nor did it render any such statutes indivisible that the Supreme Court had previously rendered divisible. It merely reiterated the "*longstanding principle*[]" that "[h]ow a given defendant actually perpetrated the crime . . . makes no difference" in analyzing a prior conviction under the categorical approach. *Id.* at 2251 (emphasis supplied).

## II.

### Prong Two of the *Wheeler* Test[5]

This case boils down to an analysis of prong two of the *Wheeler* test. Prong two has two components. First, it requires the "settled substantive law" establishing the legality of the prisoner's sentence to have "changed." *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). Second, it requires this change to have been "deemed to apply retroactively on collateral review." *Id.* Because we conclude *Mathis* did not change the settled substantive law, we need not reach the retroactivity question.

### A.

### Change in Settled Substantive Law

*Wheeler* prong two requires the petitioner to demonstrate that "the aforementioned settled substantive law changed," 886 F.3d at 429, that is, "the 'settled law of this circuit or the Supreme Court,'" *Young v. Antonelli*, 982 F.3d 914, 918 (4th Cir. 2020) (quoting *Wheeler*, 886 F.3d at 429).

### 1.

### Origin and Application

In this court's decision *In re Jones*, we held for the first time that a prisoner could pass through the savings clause and challenge his *conviction* if he could demonstrate that the "substantive law changed." 226 F.3d 328, 334 (4th Cir. 2000). In *Jones*, the petitioner,

---

[5] Because we conclude Petitioner cannot satisfy prong two, we do not consider the other three prongs.

13

Byron Jones, sought § 2241 relief based on the Supreme Court decision in *Bailey v. United States*, which held that the Government "must prove active employment of a firearm in order to convict under the 'use' prong of [18 U.S.C.] § 924(c)(1)." *Id.* at 330. We explained *Bailey* "overruled the prior law of this circuit." *Id.* Specifically, before *Bailey*, this court had concluded "constructive possession of firearms in relation to a drug transaction is sufficient to establish 'use.'" *United States v. Paz*, 927 F.2d 176, 179 (4th Cir. 1991).

Because Jones could not meet the requirements for a second or successive § 2255 motion, he attempted to pass through the savings clause of § 2255(e) by demonstrating that a § 2255 motion was "inadequate or ineffective" to test the legality of his conviction. *See Jones*, 226 F.3d at 331. We created a three-part test, explaining that, inter alia, the prisoner was required to demonstrate that the "substantive law changed" such that the conduct of which the prisoner was convicted was no longer criminal. *Id.* at 333–34; *see Hahn v. Moseley*, 931 F.3d 295, 303 (4th Cir. 2019) ("*Jones* assumes that the factual record is settled but requires this Court to compare prior and current precedent to evaluate whether a substantive change in the law has occurred."); *see also id.* at 302 (applying *Jones*, concluding the substantive law changed where a decision "introduce[d] a new statutory framework" that was not present at the time of conviction).[6]

_____

[6] *Jones* also required that a petitioner show that at the time of his conviction, the "settled law of this circuit or the Supreme Court established the legality of the conviction," and that he "cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." 226 F.3d at 333–34. Neither of those requirements are relevant here.

14

Eighteen years later in *Wheeler*, we extended *Jones* to erroneous sentences resulting in fundamental defects.  In making this extension, we specifically relied on the idea that *Jones* "contemplate[d] a change in 'substantive law,'" and we borrowed that requirement in fashioning prong two of the *Wheeler* test.  *Wheeler*, 886 F.3d at 428 (quoting *Jones*, 226 F.3d at 333–34); *see also Braswell v. Smith*, 952 F.3d 441, 448 (4th Cir. 2020) ("[T]he combination of the *change in settled substantive law* and its retroactivity must occur after the first § 2255 motion has been resolved." (alteration omitted) (emphasis supplied)).

The petitioner in *Wheeler* was able to demonstrate a change in settled substantive law because at the time of his sentencing (where he received an enhanced sentence based on having a prior felony drug offense punishable by a prison term "exceeding one year," 886 F.3d at 420), the settled substantive law in this circuit was that "to determine whether a conviction is for a crime punishable by a prison term exceeding one year, . . . we consider the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history," *United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005) (emphasis in original).  However, after Wheeler's direct appeal and first § 2255 motion, this court decided *United States v. Simmons*, wherein we overturned *Harp* and ruled that a district court could no longer look to a *hypothetical* defendant with the worst possible criminal history.  *See* 649 F.3d 237, 246 (4th Cir. 2011) (en banc).  Instead, a sentencing court could only consider the maximum possible sentence that the particular defendant could have received.  *See id.* at 246–47.  *Simmons*, therefore, changed the settled substantive law of this circuit.  *See Miller v. United States*, 735 F.3d 141, 144 (4th Cir.

2013) (explaining that in *Simmons*, "this Court changed course, overruling long-standing precedent").

Likewise, in our few published decisions applying the *Wheeler* test, those petitioners who were granted entry through the savings clause presented substantive changes in the law.

For example, *Braswell*, like *Wheeler*, relied on the change in law set forth in *Simmons*. *See* 952 F.3d at 448. And, in *Lester v. Flournoy*, 909 F.3d 708, 712 (4th Cir. 2018), we concluded that the petitioner, Stoney Lester, satisfied prong two of *Wheeler* based on a change in this court's law regarding the crime of walkaway escape.[7] First, the Supreme Court held that the Illinois crime of failure to report to a prison was not a violent felony for purposes of the ACCA in *Chambers v. United States*, 555 U.S. 122, 130 (2009). Then, based on *Chambers*, this court ruled that walkway escape, Lester's prior offense, was not a crime of violence for purposes of the (then mandatory) career offender Sentencing Guidelines, *see United States v. Clay*, 627 F.3d 959, 969 (4th Cir. 2010). We noted that after *Chambers* and *Clay*, Lester had "new precedents in hand." *Lester*, 909 F.3d at 710; *see also id.* at 711 (suggesting Lester's petition was based on a "new statutory construction[]"); *id.* at 712 (referring to *Chambers* and *Clay* as "new authority"); *cf. Young*, 982 F.3d at 918–19 (holding that, although this court elected to change the law of this

_____

[7] Provided, *Lester* was primarily concerned not with whether a substantive change occurred, but whether there was "an error sufficiently grave to be deemed a fundamental defect." 909 F.3d at 712. In fact, the opinion's brief analysis of the first three prongs of *Wheeler* appears rooted in the parties' agreement. *See id.* ("Nobody disagrees that the first three *Wheeler* requirements are satisfied.").

circuit by extending *Burrage v. United States*, 571 U.S. 204, 206 (2014), to the death results Sentencing Guidelines, the district court was correct that at the time of its decision, *Burrage* had not changed the law of this circuit).

2.

No Change in Supreme Court Law

Turning to the case at hand, we look to whether *Mathis* changed settled Supreme Court law with regard to application of the categorical approach. Petitioner submits that *Descamps* "clarif[ied] that the modified categorical approach only applies when an offense is divisible with *alternative elements*." Pet'r's Br. 12 (emphasis in original). But, Petitioner maintains, "it was not until *Mathis* that the Supreme Court gave further explanation of how to determine whether an offense had alternative *elements*, or alternative *methods* of committing a single offense." *Id.* at 13 (emphases in original).

But even in Petitioner's view, *Descamps* and *Mathis* provided "clarif[ication]" and "further explanation" of prior Supreme Court case law. And all parties in this appeal agree that *Mathis* was merely restating an old rule. *See* Pet'r's Br. 21–22 ("[T]he fact that *Mathis* itself explains that it was based on prior precedent demonstrates that it is an 'old rule' . . . ."); Gov't's Br. 12, 17 ("*Mathis* is an old rule . . . ." and *Mathis* "was not saying anything new."); Amicus Br. 19 ("*Mathis* is an old rule that does not satisfy *Wheeler*'s second prong." (capitalization omitted)).

The parties are correct. *Mathis* made clear that the categorical approach has *always* required a look at the elements of an offense, not the facts underlying it. *See Mathis*, 136 S. Ct. at 2257 ("Whether or not [alternative means of commission are] made explicit, they

17

remain what they ever were -- just the facts, which [the] ACCA (so we have held, over and over) does not care about."). Indeed, *Mathis* merely repeated the "simple point" that served as "a mantra" in its ACCA decisions: "a sentencing judge may look only to the elements of the offense, not to the facts of the defendant's conduct." *Id.* at 2251 (alterations and internal quotation marks omitted); *see also id.* at 2248 ("ACCA, *as we have always understood it*, cares not a whit about [facts]." (emphasis supplied)); *id.* at 2253 ("[O]ur cases involving the modified categorical approach have already made exactly that point [i.e., that facts cannot be used to enhance a sentence]."); *id.* at 2255 ("*Descamps* made clear that when the Court had earlier said (and said and said) 'elements,' it meant just that and nothing else."); *id.* at 2257 ("Our precedents make this a straightforward case."). At the risk of "downright tedium," it listed the ACCA decisions explaining this point. *Id.* at 2252 (citing *James v. United States*, 550 U.S. 192 (2007); *Sykes v. United States*, 564 U.S. 1 (2011); *Descamps*, 570 U.S. at 261).

Even in *Descamps*, which was decided while Petitioner's first § 2255 motion was pending, the Court stated, "In [our prior] decisions . . . the modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." 570 U.S. at 260. And "[t]he key" when deciding whether to apply an enhancement pursuant to the ACCA "is elements, not facts." *Id.* at 261.

For these reasons, *Mathis* did not change the settled substantive law of the Supreme Court with regard to when a court should apply the categorical or modified categorical approach. *See Muhammad v. Wilson*, 715 F. App'x 251, 252–53 (4th Cir. 2017) (per

18

curiam) ("*Descamps* and *Mathis* did not announce a substantive change to the law. Rather, these cases reiterated and clarified when to apply the categorical approach or the modified categorical approach, which was set forth in *Taylor*. . . .").

3.

No Change in Fourth Circuit Law

Primarily, however, Petitioner contends that he can satisfy the second prong of the *Wheeler* test because *Mathis* changed the settled substantive law *of this court*. As Petitioner's argument goes, before *Mathis*, courts in this circuit believed South Carolina third-degree burglary was divisible and therefore subject to the modified categorical approach, but after *Mathis*, those courts are now using the categorical approach. *See* Pet'r's Br. 15–16; *see also* Gov't's Br. 17–18. Petitioner's argument, however, misses the mark.

a.

*United States v. Hall*

First, Petitioner points to our unpublished decision in *United States v. Hall*, 684 F. App'x 333 (4th Cir. 2017) (per curiam), as evidence of the shift in this court's application of the categorical approach to South Carolina third degree burglary. *See* Pet'r's Br. 15. Specifically, *Hall* concluded that South Carolina third degree burglary "cannot serve as a predicate felony under the ACCA" because, like the Iowa statute at issue in *Mathis*, "the South Carolina statute . . . is not divisible." *Id.* at 335. And we said *Mathis* "is dispositive in this case." *Id.*

But *Hall* cannot bear the weight Petitioner gives it. *Hall* was an unpublished, non-precedential decision and cannot be faithfully read to demarcate a change in settled law.

19

We have "be[en] clear" that, where this court concluded in an unpublished opinion that Virginia abduction fell within the residual clause of U.S.S.G. § 4B1.2(a), such a decision "d[id] not constitute binding authority under our circuit rules." *United States v. Morris*, 917 F.3d 818, 826 (4th Cir. 2019); *see also Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 545–46 n.4 (4th Cir. 2019) ("Unpublished decisions, of course, do not constitute binding precedent in this Circuit."); *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 339 (4th Cir. 2009) (reaching a decision at odds with unpublished precedent, noting that "[w]e . . . are not bound by" unpublished precedent, and "'we ordinarily do not accord precedential value to our unpublished decisions.'") (quoting *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006)); *cf.* 4th Cir. Local R. 36(b) ("Unpublished opinions give *counsel, the parties, and the lower court or agency* a statement of the reasons for the decision." (emphasis supplied)).

b.

### *United States v. McLeod*

Next, Petitioner relies on *United States v. McLeod* to demonstrate that this court was applying the modified categorical approach to South Carolina burglary after *Descamps* but before *Mathis*. *See* 808 F.3d 972, 974 (4th Cir. 2015). But this decision also does not help Petitioner.

In *McLeod*, this court applied the modified categorical approach to South Carolina second degree burglary (which contains the same definition of "building" as third degree burglary), saying that approach was "authorized by *Taylor* and *Descamps*." 808 F.3d at 974 (citation omitted). It also explained the South Carolina burglary statute "defines the

20

term 'building' to include 'any structure, vehicle, watercraft, or aircraft,' providing *elements* alternative to generic burglary." *Id.* at 976 (emphasis supplied) (quoting S.C. Code Ann. § 16–11–310(1)).

But if, as Petitioner wishes, we read *McLeod* as standing for the proposition that this court viewed South Carolina burglary as a divisible offense necessitating the modified categorical approach, there has been no published circuit opinion abrogating that principle. Although *Mathis*'s clarification of when to use the modified categorical approach may undercut *McLeod*'s treatment of "structure, vehicle, watercraft, or aircraft" as "elements," *McLeod*, a precedential panel decision, could not have been "changed" by *Hall*, a non-precedential decision, to satisfy prong two of *Wheeler*. *Wheeler*, 886 F.3d at 429.

c.

Reading Indivisible Statutes

Petitioner also cites *United States v. Kirksey*, 138 F.3d 120 (4th Cir. 1998), for the proposition that at the time of Petitioner's sentencing, this court was applying the modified categorical approach to statutes without divisible elements -- in that case, Maryland common law assault. *See* Pet'r's Br. 12. While that may be true for the particular Maryland offense at issue in *Kirksey*, we said nothing in that case about South Carolina burglary. In any event, we abrogated the approach taken in *Kirksey* years before *Mathis*. *See United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013). In *Royal*, we looked to the elements of Maryland assault, the first of which was "the defendant caused offensive physical contact with, or harm to, the victim." *Id.* We then explained that Maryland law did not require juries to be unanimous in finding *either* physical contact *or* harm; "it is enough that each

21

juror agree only that one of the two occurred." *Id.* Thus, "[r]ather than alternative elements, . . . offensive physical contact and physical harm are merely alternative means of satisfying a single element of the Maryland offense. Consequently, because 'the dispute here does not concern any list of alternative elements,' the modified approach 'has no role to play.'" *Id.* (quoting *Descamps*, 570 U.S. at 264) (alteration and internal quotation marks omitted). In other words, by 2013 we were already reading certain statutes containing alternative means of fulfilling one element as they should always have been read -- as indivisible statutes. In so doing, we expressed our view that "[i]n *Descamps*, the Supreme Court . . . *clarified* whether courts may apply the modified categorical approach to assess . . . an indivisible criminal statute." *Id.* at 340; *see also United States v. Aparicio-Soria*, 740 F.3d 152, 155–56 (4th Cir. 2014) (en banc) (observing how four different precedential decisions were abrogated by this court in decisions issued after *Descamps*, because *Descamps* clarified that those four decisions improperly applied the modified categorical approach to Maryland's assault statute).

Petitioner claims *Descamps* "began to change" the categorical approach, undercutting the idea that *Mathis* itself changed the substantive law of this circuit. Pet'r's Br. 12. In fact, *Mathis* itself cited with favor two of this court's decisions in describing how courts should differentiate between divisible and indivisible statutes. In the first instance, the Court set forth the circuit split that developed, in which some courts held that "ACCA's general rule -- that a defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense -- gives way when a statute happens to list various means by which a defendant can satisfy an element." *Mathis*, 136 S. Ct. at

22

2251. In a footnote, the Court cited *Omargharib v. Holder*, 775 F.3d 192 (4th Cir. 2014) as properly rejecting that "exception." *See id.* at 2251 n.1. Indeed, we stated in *Omargharib* that "a crime is divisible under *Descamps* only if it is defined to include multiple alternative *elements* (thus creating multiple versions of a crime), as opposed to multiple alternative *means* (of committing the same crime)." 775 F.3d at 198 (emphases in original).

*Mathis* positively cited another Fourth Circuit case for the proposition that "if a statutory list is drafted to offer illustrative examples, then it includes only a crime's means of commission." 136 S. Ct. at 2256 (internal quotation marks omitted) (citing *United States v. Cabrera-Umanzor*, 728 F.3d 347, 353 (4th Cir. 2013)). The portion of *Cabrera-Umanzor* cited by *Mathis* addressed a Maryland sex abuse statute that required the State to prove that the defendant engaged in an act involving sexual molestation or exploitation of a minor with whom he held a certain familial or custodial relationship. *See* 728 F.3d at 353. Though the statute listed various types of crimes constituting sexual abuse (e.g., "incest, rape, or sexual offense in any degree"), this court held (and the Supreme Court presumably endorsed) that the listed crimes "are not elements of the offense, but serve only as a non-exhaustive list of various means by which the elements of sexual molestation or sexual exploitation can be committed." *Id.*

d.

*Mathis*

Unlike the decisions in *Simmons*, *Chambers*, *Clay*, *Bailey*, and *Burrage*, here, we cannot say *Mathis* changed this circuit's settled law. Instead, *Mathis* explained that courts must look to each individual state statute and/or law to apply the elements/means analysis:

> This threshold inquiry—elements or means?—is easy in this case, as it will be in many others. Here, a state court decision definitively answers the question: The listed premises in Iowa's burglary law, the State Supreme Court held, are "alternative method[s]" of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle. When a ruling of that kind exists, a sentencing judge need only follow what it says. Likewise, the statute on its face may resolve the issue. If statutory alternatives carry different punishments, then under *Apprendi*[8] they must be elements. Conversely, if a statutory list is drafted to offer "illustrative examples," then it includes only a crime's means of commission. And a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means). Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list.

*Mathis*, 136 S. Ct. at 2256 (citations omitted); *see also id.* at 2257 ("Whether or not [alternative means of commission are] made explicit, they remain *what they ever were* -- just the facts, which ACCA (so we have held, over and over) does not care about." (emphasis supplied)). We decline to hold that *Mathis*'s explanation about how to determine whether parts of a statute are "elements or means" changed this circuit's

---

[8] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

24

substantive law applying the modified categorical approach to South Carolina third degree burglary.[9]  And with no precedential circuit decision marking this change, Petitioner has simply failed to demonstrate a change in this circuit's settled substantive law.[10]

B.

Other Circuits' Savings Clause Tests

Finally, Petitioner relies on cases from the three other circuits that provide relief from erroneous sentences via the savings clause.  However, these cases are inapposite because they do not utilize a test like *Wheeler*.  First, the Sixth Circuit employs a savings clause test requiring "(1) a case of statutory interpretation, (2) that is retroactive and could not have been invoked in the initial § 2255 motion, and (3) that the misapplied sentence presents an error sufficiently grave to be deemed a miscarriage of justice or a fundamental defect." *McCormick v. Butler*, 977 F.3d 521, 525 (6th Cir. 2020).  Rather than requiring a change in substantive law, as does *Wheeler*, the Sixth Circuit test merely requires the

---

[9] At oral argument, Petitioner invited this court to create the change in substantive circuit law as part of our *Wheeler* analysis, like this court did in *Young v. Antonelli*. *See* 982 F.3d at 919.  First, the drastic step taken in *Young* should be used sparingly in this jurisdictional analysis, and only when a change in Supreme Court precedent necessarily dictates a change in our circuit law.  Here, for the reasons explained above and because we have binding precedent that runs contrary to the change Petitioner asks us to make, we decline to go so far.

[10] Petitioner has not argued what effect, if any, a future published decision of this court or the Supreme Court specifically abrogating *McLeod* may have on a future 2241 petition.  Federal courts "may not issue advisory opinions," *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019), and therefore we offer no view on such a future event.

petitioner to demonstrate that *Mathis* could not have been invoked, whether as foreclosed by circuit precedent or otherwise.

Similarly the Seventh Circuit requires: "(1) the claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked the decision in his first § 2255 motion and the decision applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019) (internal quotation marks omitted). Again, unlike the *Wheeler* test, there is no requirement of a substantive change in law.

Finally, the Ninth Circuit requires only that the prisoner (1) "make[] a claim of actual innocence," and (2) "not [have] had an unobstructed procedural shot at presenting that claim." *Allen v. Ives*, 950 F.3d 1184, 1188 (9th Cir. 2020) (internal quotation marks omitted). A "procedural shot" could arguably be obstructed by case law misinterpreting *Mathis*, rather than having a law in place that is later substantively changed.

Therefore, because none of these out of circuit tests equate to *Wheeler*, we find Petitioner's reliance on them unconvincing.

III.

For these reasons, *Mathis* did not change the substantive law of the Supreme Court or this court. Because Petitioner cannot satisfy prong two of the *Wheeler* test, we affirm the district court.

*AFFIRMED*

26