**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-6956**

STONEY LESTER,

Petitioner − Appellant,

v.

J.V. FLOURNOY, Warden of FCI Jesup,

Respondent – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, District Judge.  (1:12-cv-00681-LO-JFA)

Argued:  October 30, 2018                    Decided:  November 30, 2018

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

Vacated and remanded by published opinion.  Judge Diaz wrote the opinion, in which Judge Duncan and Judge Keenan joined.

**ARGUED:** Bradley Nelson Garcia, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant.  Michael Alan Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Jonathan D. Hacker, Kathryn E. Tarbert, Rakesh Kilaru, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant.  Leslie R. Caldwell, Assistant Attorney General, Brian A. Benczkowski, Assistant Attorney General, David A. O'Neil, Acting Deputy Assistant Attorney General, Sung-Hee Suh, Deputy Assistant Attorney General, Matthew S. Miner, Deputy Assistant Attorney General, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dana J. Boente, Acting United States Attorney, OFFICE OF

THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————

DIAZ, Circuit Judge:

In 2004, after pleading guilty to selling crack cocaine to a government informant, Stoney Lester was sentenced to almost 22 years in prison. Lester received that sentence because he was designated a career offender under the then-mandatory Sentencing Guidelines. Later precedent, however, established that this designation was wrong and that, as a result, Lester's sentence should have been up to 11 years shorter. Lester sought relief through habeas corpus, but the district court denied his petition. Because our recent decision in *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), permits Lester's challenge, we vacate and remand.

I.

Lester pled guilty to a single count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841. Under the Sentencing Guidelines, which at that time were mandatory, Lester was deemed a career offender and subject to a sentencing enhancement. *See* U.S. Sentencing Guidelines Manual (U.S.S.G.) § 4B1.1 (2004). This enhancement depended on a past conviction for a "crime of violence," namely Lester's 1990 Georgia conviction for walkaway escape. With the enhancement, the guidelines range was 262–327 months in prison. Without the enhancement, however, Lester's Guidelines range would have been 121–151 months. The statutory maximum sentence was 40 years. *See* 21 U.S.C. § 841(b)(1)(B). Lester received a sentence of 262 months (a bit under 22 years), right at the bottom of the required Guidelines range.

3

Lester appealed, unsuccessfully, and filed a motion to vacate his sentence under 28 U.S.C. § 2255, which was denied. In those proceedings Lester couldn't successfully challenge his classification as a career offender because, under then-controlling precedent, walkaway escape under Georgia law was a crime of violence. *See United States v. Gay*, 251 F.3d 950, 954–55 (11th Cir. 2001).[1] As the years passed by, however, the law changed in two important ways. First, the Supreme Court stripped the Sentencing Guidelines of legal force and made them purely advisory. *United States v. Booker*, 543 U.S. 220, 245 (2005). Second, it ruled that the generic crime of failing to report to a prison was not a crime of violence, *Chambers v. United States*, 555 U.S. 122, 127–28 (2009), which led courts to hold that the escape offense Lester committed was not a crime of violence either. *See United States v. Clay*, 627 F.3d 959, 969 (4th Cir. 2010) (collecting circuit cases); *United States v. Lee*, 586 F.3d 859, 874 (11th Cir. 2009).

These new precedents in hand, Lester sought habeas relief in the U.S. District Court for the Eastern District of Virginia in 2012. In his petition, he contended that his escape offense was not a crime of violence, that he thus wasn't subject to the career offender enhancement, and that his 262-month sentence was therefore unlawful because it exceeded the then-mandatory Guidelines range of 121–151 months.

---

[1] Lester was sentenced in the Middle District of Georgia, so the Eleventh Circuit's precedents governed the legality of his sentence back then. But he filed his current petition in the Eastern District of Virginia because that's where he was confined at the time. *See* 28 U.S.C. § 2241(a).

Because Lester had already filed a petition under 28 U.S.C. § 2255, the ordinary recourse for federal prisoners seeking postconviction relief, he couldn't bring his challenge under that statute. Instead, he filed under 28 U.S.C. § 2241, a catchall habeas statute, arguing that such petitions are allowed, pursuant to § 2255's so-called "savings clause," when the latter statute is "inadequate or ineffective to test the legality of [one's] detention." *See id.* § 2255(e). But the district court rejected this argument, reasoning that the savings clause didn't allow challenges based on Sentencing Guidelines errors, at least when the petitioner's sentence, like Lester's, still fell below the statutory maximum.

Lester appealed.

## II.

That was in 2013. Since then, Lester's appeal has been held in abeyance while our court decided three potentially relevant cases: *Whiteside v. United States*, 775 F.3d 180 (4th Cir. 2014) (en banc), *United States v. Surratt*, 797 F.3d 240 (4th Cir. 2015), *vacated & dismissed as moot*, 855 F.3d 218 (4th Cir. 2017) (en banc), and *Wheeler*, 886 F.3d 415. But now, with *Wheeler* shining light on the issues before us, we consider whether Lester may challenge his sentence via the savings clause of 28 U.S.C. § 2255. This is a question of law that we review de novo. *United States v. Foote*, 784 F.3d 931, 935–36 (4th Cir. 2015).

Section 2255 allows federal prisoners to challenge the legality of their confinement by petitioning the court where they were sentenced. 28 U.S.C. § 2255(a). But once the prisoner has filed one unsuccessful § 2255 motion, as Lester has, he may not file another

5

except under very limited circumstances. Specifically, before filing a "second or successive" petition, the prisoner must first receive permission from the court of appeals by showing either "newly discovered evidence" proving he was not guilty of his offense or that a new, previously unavailable rule of constitutional law made retroactive on collateral review by the Supreme Court entitles him to relief. *Id.* § 2255(h)(1)–(2). These restrictions are referred to as the "gatekeeping provisions" of § 2255. Crucially, they don't allow a second petition for new statutory constructions.

The gatekeeping provisions bar most federal prisoners from taking a second bite at the habeas apple. But not completely. In limited circumstances, courts including ours have said that a prisoner otherwise unable to file a second or successive § 2255 petition may instead seek relief under 28 U.S.C. § 2241. *See, e.g.*, *In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000); *In re Davenport*, 147 F.3d 605, 610–12 (7th Cir. 1998). That's because § 2255, while generally blocking habeas petitions by federal prisoners outside that statute, permits such petitions when it appears that § 2255 "is inadequate or ineffective to test the legality of [the prisoner's] detention." 28 U.S.C. § 2255(e). This clause is commonly referred to as the "savings clause" as it arguably saves § 2255 from unconstitutionally suspending habeas corpus. *See Reyes-Requena v. United States*, 243 F.3d 893, 901 n.19 (5th Cir. 2001) (citing *Swain v. Pressley*, 430 U.S. 372, 381 (1977)).[2]

---

[2] Not all circuits agree that § 2255's savings clause authorizes successive motions otherwise barred by that statute. *See McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1090–91 (11th Cir. 2017) (en banc); *Prost v. Anderson*, 636 F.3d 578, 588–89 (10th Cir. 2011) ("[T]he savings clause is satisfied so long as a petitioner could've raised his argument in an initial § 2255 motion.").

We have held that § 2255's savings clause applies when, after a prisoner's first § 2255 motion, "the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal." *Jones*, 226 F.3d at 333–34. When a prisoner in that situation is barred by the gatekeeping provisions from filing a second § 2255 motion, we have said § 2255 is "inadequate or ineffective to test the legality of [his] conviction" and allowed a petition under § 2241. *Id.* at 334.

More recently, in *Wheeler*, we ruled that a prisoner may use § 2255's savings clause to challenge not just an unlawful conviction, but also a defective sentence. In that case, Gerard Wheeler was sentenced to ten years for involvement in a drug conspiracy. *Wheeler*, 886 F.3d at 419. That sentence was the minimum required by statute because the district court determined that Wheeler's prior North Carolina conviction for cocaine possession was a "felony drug offense." *Id.* (quoting 21 U.S.C. § 841(b)(1)(B)). Without the enhancement for the North Carolina conviction, however, Wheeler's statutory sentencing range would have been between five and 40 years. *Id.* at 419–20.

After Wheeler was sentenced and had exhausted his direct appeals, we decided *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc). Under this new precedent, Wheeler's North Carolina conviction no longer qualified as a felony drug offense, so the ten-year mandatory minimum would not apply. *Wheeler*, 886 F.3d at 421. Wheeler thus sought to challenge his allegedly erroneous sentence, but he had already filed one unsuccessful § 2255 motion, and the gatekeeping provisions barred a second as *Simmons* was not a constitutional decision.

7

Nevertheless, we allowed Wheeler's petition under § 2241 to proceed. We held that the savings clause could be used to challenge sentences, reasoning that the statutory language of the savings clause speaks of the legality of one's "detention," not simply one's "conviction" or "offense." *Id.* at 427–28; *see* 28 U.S.C. § 2255(e). We also noted that the Supreme Court has "long recognized a right to traditional habeas corpus relief based on an illegally extended sentence." *Wheeler*, 886 F.3d at 428 (citing *Nelson v. Campbell*, 541 U.S. 637, 643 (2004)).

We then outlined when the savings clause may be used to challenge erroneous sentences. Specifically, we said, § 2255 is inadequate and ineffective to test the legality of a sentence if the following four conditions are met:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence;
>
> (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review;
>
> (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and
>
> (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Id.* at 429 (paragraph breaks added).

Finding that Wheeler satisfied all four conditions, we allowed him to challenge his sentence. *Id.* at 429–30.

8

III.

The question before us is whether Lester, like Wheeler, can use the savings clause to challenge his sentence. We must decide, in short, how *Wheeler* applies in Lester's case.

Nobody disagrees that the first three *Wheeler* requirements are satisfied. First, Lester's sentence was legal at the time. When Lester was sentenced in June 2004, settled precedent established that his past conviction for walkaway escape was a "crime of violence." With this prior crime of violence (plus an old controlled substance offense irrelevant to this appeal), Lester was deemed a "career offender," subjecting him to an enhanced sentencing range. *See* U.S.S.G. § 4B1.1(a)–(b). Second, well after Lester's direct appeal and § 2255 motion, the substantive law changed. After the Supreme Court decided *Chambers* in 2009, both the Eleventh and Fourth Circuits ruled that Lester's prior offense is not a crime of violence. *Clay*, 627 F.3d at 969; *Lee*, 586 F.3d at 874. The government hasn't disputed that this new authority applies retroactively on collateral review. *Cf. Narvaez v. United States*, 674 F.3d 621, 623 (7th Cir. 2011) (holding that *Chambers* applies retroactively). Third, Lester can't satisfy the gatekeeping provisions of § 2255. No new evidence suggests he's actually innocent of the federal drug charges he was imprisoned for, and *Chambers* is a decision of statutory interpretation, not constitutional law.

The only dispute, then, is whether this case meets the fourth *Wheeler* requirement—whether Lester's misclassification as a career offender, which increased his mandatory Guidelines range from a maximum of 151 months to a minimum of 262, is an "error

9

sufficiently grave to be deemed a fundamental defect." *Wheeler*, 886 F.3d at 429. Applying the holding and reasoning of *Wheeler*, we conclude that it is.

A.

In *Wheeler*, we addressed whether an erroneous increase in the petitioner's mandatory minimum from five to ten years made his sentence fundamentally defective. *Id.* at 430. We said it did because an "increase in the congressionally mandated sentencing floor implicates separation of powers principles and due process rights fundamental to our justice system." *Id.* Specifically, we found the petitioner's sentence fundamentally defective because the district court was wrongly prevented from exercising the proper range of his sentencing discretion.

We reached this conclusion primarily by relying on two Supreme Court cases. First, we observed that in *Hicks v. Oklahoma*, 447 U.S. 343 (1980), the Supreme Court found a Fourteenth Amendment violation where a jury imposed a 40-year mandatory sentence under a habitual offender statute that was later struck down. Without the enhancement, the jury could have imposed a sentence as low as ten years. *Id.* at 346. The Supreme Court, we noted, held that Hicks had a "substantial and legitimate expectation that he would be deprived of his liberty only to the extent determined by the sentencing body in the exercise of its statutory discretion." *Wheeler*, 886 F.3d at 430 (brackets omitted) (quoting *Hicks*, 447 U.S. at 346). We observed that likewise in Wheeler's case, without the enhancement "the district court's statutory discretion would have been expanded by a much lower mandatory minimum." *Id.* at 431.

Second, we discussed *United States v. Tucker*, 404 U.S. 443 (1972). In that case the Supreme Court vacated a 25-year sentence that the judge had clearly based on two prior convictions that were later ruled constitutionally invalid. *Id.* at 444–45, 448–49. The Court explained that the sentence was not "imposed in the informed discretion of a trial judge" but instead rested upon "misinformation of constitutional magnitude" and "assumptions concerning [the defendant's] criminal record which were materially untrue." *Id.* at 447 (quoting *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). We reasoned that Wheeler's sentence was similarly defective: the district court assumed his prior conviction was sufficient to double his statutory minimum when in fact it was not. *Wheeler*, 886 F.3d at 431.

Turning to our own precedent, we noted that we have previously described incorrect sentencing benchmarks as fundamentally problematic because they create "the mistaken impression that the district court had no discretion to vary downward from the low end of the defendant's range." *Id.* (brackets omitted) (quoting *United States v. Newbold*, 791 F.3d 455, 460 n.6 (4th Cir. 2015) (citing *Hicks*, 447 U.S. at 346)). Given this fundamental problem with an incorrect sentencing range, we rejected the notion that Wheeler's sentence was immune to challenge because he could have received the same ten-year sentence even with the correct mandatory minimum. "[S]uch an arbitrary disregard of the petitioner's right to liberty," we said, quoting *Hicks*, "is a denial of due process of law." *Id.* at 431–32 (quoting 447 U.S. at 346).

We also rejected the argument that any sentence below Wheeler's 40-year statutory maximum cannot be fundamentally defective, relying on two out-of-circuit cases. We

11

noted that the Sixth and Seventh Circuits have held that a federal prisoner may use the savings clause "to challenge the misapplication of the career offender Guideline, at least where . . . the defendant was sentenced in the pre-*Booker* era," even though the sentence was below the statutory maximum. *Id.* at 432 (quoting *Brown v. Caraway*, 719 F.3d 583, 588 (7th Cir. 2013)); *id.* at 433 (discussing *Hill v. Masters*, 836 F.3d 591, 599 (6th Cir. 2016)). In both those cases, the petitioners—just like Lester—were erroneously subject to career offender enhancements that substantially increased their sentencing ranges under the then-mandatory Guidelines. *See Hill*, 836 F.3d at 593; *Brown*, 719 F.3d at 585. Both courts, we noted, thus "recognize[d] the fundamental significance of a proper sentencing range." *Wheeler*, 866 F.3d at 433. Accordingly, we agreed with their view that a sentencing error "need not result in a sentence that exceeds statutory limits in order to be a fundamental defect." *Id.*

### B.

Lester argues that his sentence is fundamentally defective because, like Wheeler's, it was the product of an erroneous increase to his mandatory sentencing range. He says he therefore should be allowed to challenge it under § 2241 via the savings clause. Under *Wheeler*, we must agree.

As the preceding discussion of *Wheeler* makes clear, in that case, we found that Wheeler's sentence suffered the same fundamental defect as the sentence in *Hicks*. A defendant has a due process right to be "deprived of his liberty only to the extent determined by the [trier of fact] in the exercise of its statutory discretion," *Hicks*, 447 U.S. at 346, but, because of an interpretive error, Wheeler was denied that right. And we

12

suggested that incorrectly applied sentencing benchmarks are fundamentally problematic because they wrongly cabin the district court's discretion to impose a lower sentence when the facts of the crime warrant it.

Those problems are present in Lester's case, but more so. *Wheeler*'s erroneous sentencing enhancement raised the floor of the district court's sentencing discretion from five to ten years. Yet even without the erroneous enhancement, the court could still have given Wheeler the same ten-year sentence. Lester's sentence, in contrast, fell well outside the district court's proper range of sentencing discretion. Because of Lester's erroneous designation as a career offender, the court was required by statute to impose a sentence between 262 and 327 months. *See* 18 U.S.C. § 3553(b)(1) (requiring courts to impose Guidelines sentences), *invalidated by Booker*, 543 U.S. at 245. Without the enhancement, though, the court would have been bound to issue a sentence within the 121–151 months range. Lester's 262-month sentence, then, is more than nine years longer than the maximum sentence that the court rightfully had discretion to order. By *Wheeler*'s logic, this sentence is fundamentally defective.

Our conclusion that Lester may collaterally attack his sentence also follows from *Wheeler*'s discussion of two cases allowing challenges by petitioners in Lester's very predicament. In both *Hill* and *Brown*, the Sixth and Seventh Circuits allowed petitioners sentenced within erroneous Guidelines ranges pre-*Booker* to challenge their sentences under § 2241 via the savings clause. We cited these cases to reject the government's contention that any sentence falling below the statutory maximum is per se lawful and thus immune from savings clause challenge. Our discussion of those cases, however, would

13

have made little sense if we did not agree with their basic holding—that a sentence is fundamentally defective when it exceeds the mandatory Guidelines range that, according to later retroactive precedent, should have applied.

For these reasons, we conclude that the sentencing error in Lester's case is "sufficiently grave to be deemed a fundamental defect." *Wheeler*, 886 F.3d at 429.

## C.

The government offers two main arguments why Lester's sentence is not fundamentally defective such that he may not proceed via § 2255's savings clause. We find neither persuasive.

First, the government urges that *Wheeler* doesn't control here because, in that case, the petitioner was sentenced pursuant to an erroneous statutory enhancement whereas Lester's range was mandated by the Sentencing Guidelines. Unlike statutes, the government contends, the Guidelines don't establish the maximum and minimum lawful sentences for crimes. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989). Thus, it argues, the separation-of-powers reasons for treating statutory mandatory minimum sentences as fundamental defects do not translate to mandatory Guideline errors.

The problem with the government's argument, however, is that *Wheeler* was not primarily a separation-of-powers case. To be sure, our opinion in *Wheeler* stated general separation-of-powers principles applicable to sentencing. *See* 886 F.3d at 430 ("In the federal system, 'defining crimes and fixing penalties are legislative, not judicial, functions.'" (quoting *United States v. Evans*, 333 U.S. 483, 486 (1948))). But we didn't find *Wheeler*'s sentence fundamentally defective because the court lacked authority from

14

Congress to impose it. Nor could we, given that Wheeler's ten-year sentence fell well within the correct statutory range of 5–40 years. Rather, *Wheeler* turned on the notion that a defendant has a due process right to have the trier of fact "exercise . . . its statutory discretion" when imposing a sentence. *Hicks*, 447 U.S. at 346. The government can't dispute that Lester's right to this appropriate exercise of discretion was denied here because his erroneous designation as a career offender produced a statutorily required sentencing range much higher than the correct range.

The government's second argument is that *United States v. Foote*, and not *Wheeler*, applies here. In *Foote*, we said a prisoner couldn't challenge a trial court's misapplication of the advisory Guidelines under § 2255. 784 F.3d at 932. The government is correct that in *Foote*, we distinguished a misapplied career offender enhancement from fundamental defects such as "sentences issued 'in excess of the maximum authorized by law.'" *Id.* at 942 (quoting 28 U.S.C. § 2255(a)). But crucial to our analysis in *Foote* was that the petitioner, unlike Lester, was sentenced after *Booker* had rendered the Guidelines purely advisory. Because the Guidelines lacked legal force, we explained, an erroneous advisory Guidelines classification was unlike a violation of a statute or constitutional provision. *Id.* at 942; *see Wheeler*, 886 F.3d at 432 n.9 (distinguishing *Foote*).

*Foote* undoubtedly would bar Lester's petition had he been sentenced under the advisory Guidelines. But *Foote* simply doesn't apply to a petitioner sentenced in the pre-*Booker* era. Indeed, we denied the petitioner's claim in *Foote* partly on the grounds that, because he was sentenced under the advisory Guidelines, the district court not only had discretion to decide whether the Guidelines sentence was justified, but in fact was required

15

to do so. *Foote*, 784 F.3d at 941–42; *see* 18 U.S.C. § 3553(a) (requiring individualized analysis of sentencing factors). That discretion is precisely what the district court lacked at Lester's sentencing because, at that time, the Guidelines were mandatory.

We also reject the idea, floated here and there by the government, that because a district court theoretically could depart from the Guidelines even when they were mandatory, the due process concerns in *Wheeler* are misplaced. Departures were allowed only when the court found aggravating or mitigating circumstances "not adequately taken into consideration by the Sentencing Commission" in writing the Guidelines. 18 U.S.C. § 3553(b)(1). As the Supreme Court explained in *Booker*, "[i]n most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible." 543 U.S. at 234. In other words, in most cases— and doubtless in a "run-of-the-mill drug case" like Lester's—the district court had no discretion to deviate from the Guidelines. *See id.* at 235.

In short, we find the government's attempts to skirt *Wheeler* unpersuasive. And this is so even as we are mindful that the savings clause should provide only the tightest alleyway to relief. Section 2255 is not "inadequate or ineffective" just because the prisoner can't successfully challenge his sentence under that provision. As we have said before, interpreting the savings clause coextensively with § 2255 would "effectively nullify the gatekeeping provisions" that Congress carefully wrote into that statute. *Jones*, 226 F.3d at 333.

However, our analysis is governed by *Wheeler*, and we find no meaningful distinction to support a different result in this case. Where, as here, an erroneous career

16

offender designation raises a defendant's mandatory prison term from a maximum of 12 ½ years to a minimum of almost 22, the resulting sentence is fundamentally defective.

IV.

Because Lester satisfies all four *Wheeler* requirements, we hold that 28 U.S.C. § 2255 is inadequate and ineffective to test the legality of his detention and that his petition under 28 U.S.C. § 2241 should be heard on the merits. We therefore vacate the district court's judgment and remand the case for further proceedings consistent with this opinion.

*VACATED AND REMANDED*