**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-6719**

PATRICK MARLOWE,

      Petitioner - Appellant,

  v.

WARDEN, FCI HAZELTON,

      Respondent - Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:17-cv-0011-JPB)

Argued:  March 10, 2021                    Decided:  July 27, 2021

Before NIEMEYER, MOTZ, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge Rushing wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

**ARGUED:**  Jeremy Brian Gordon, JEREMY GORDON, PLLC, Mansfield, Texas, for Appellant.  Jason Lee, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  William J. Powell, United States Attorney, Martinsburg, West Virginia, Tara N. Tighe, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

RUSHING, Circuit Judge:

Patrick Marlowe appeals the district court's dismissal of his 28 U.S.C. § 2241 habeas petition. Section 2241 is not available to Marlowe, a federal prisoner, unless a 28 U.S.C. § 2255 motion would be "inadequate or ineffective" to test the legality of his detention. 28 U.S.C. § 2255(e). Relevant here, under this Court's precedent a Section 2255 motion can prove inadequate or ineffective only if, when Marlowe was convicted, the settled law of the Supreme Court or the circuit in which he was convicted established the legality of his conviction. Our cases and an examination of the habeas remedy demonstrate that, to satisfy this requirement, a prisoner must show that binding precedent previously foreclosed the argument he later presses to collaterally attack his conviction. Because Marlowe cannot so demonstrate, the district court lacked jurisdiction to entertain his petition.

I.

A.

Marlowe supervised corrections officers working the second shift at the county jail in Wilson County, Tennessee. *United States v. Conatser*, 514 F.3d 508, 514 (6th Cir. 2008). Marlowe, in his own words, ran "a different kind of shift." *Id.* (internal quotation marks omitted). He and his officers "would strike and kick inmates who were loud, obnoxious, or uncooperative and would conceal their unjustified use of force through the denial of medical care and the falsification of incident reports." *Id.*

2

This appeal concerns Marlowe's complicity in the death of detainee Walter Kuntz. We briefly summarize the relevant facts as recounted by the Sixth Circuit when it affirmed Marlowe's resulting prison sentence. *Id.* at 516–518.

On January 13, 2003, authorities booked Kuntz into Marlowe's jail after he left the scene of a minor automobile accident. His blood alcohol level registered approximately .26. Kuntz soon began causing a ruckus in his cell. When Kuntz ignored commands to stop, Marlowe "punched Kuntz in the left side of his head, threw him toward the wall, and kicked, punched, and kneed Kuntz in the rib area." *Id.* at 516. Kuntz calmed down briefly before again banging on his cell door. Marlowe reentered Kuntz's cell and "struck Kuntz in the left temple area, knocking him down, and then punched and kicked Kuntz some more." *Id.* Another officer sprayed Kuntz with a chemical agent as the officers left the cell.

Kuntz was quiet for a time before again yelling and kicking the cell door. Marlowe instructed one of his subordinates to "take care of the situation." *Id.* (internal quotation marks omitted). The subordinate returned to Kuntz's cell with other officers. As Kuntz backed away, an officer "pushed him onto the bench next to the wall," with the right side of Kuntz's head facing the officer and the left side four or five inches from the wall. *Id.* The officer delivered "three or four 'full power' punches to the right side of Kuntz's head. Each time, the left side of Kuntz's head bounced off the wall and made a 'cracking sound.' The officers left Kuntz holding his head and moaning. [The officer] told Marlowe he had 'taken care of it.'" *Id.* at 516–517.

3

Over the following hours, the officers observed Kuntz lying unconscious in his own vomit and learned that he had undergone brain surgery a year or two earlier. Though Kuntz was unresponsive, Marlowe did not request medical attention. Instead, Marlowe and a subordinate "tried to rouse him by shaking him, patting him, and pouring a bucket of ice water over him." *Id.* at 517. Kuntz did not respond. The officers used ammonia smelling salts to no avail, noticing instead "that Kuntz would stop breathing until the salts were taken away." *Id.* Yet medical care went unsolicited. Another check on Kuntz found him lying down with his eyes open and unresponsive "to being shaken or having a light shone in his eyes." *Id.* A subordinate alerted Marlowe; he took no action.

Approximately six hours after Kuntz's last beating, the officers called an ambulance. The responding EMTs determined that Kuntz "was a level three on the level of consciousness scale—the same level as a deceased person." *Id.* The EMTs believed they were responding to a case of possible alcohol poisoning, and no one disabused them of that notion. Rather than being airlifted to a trauma center for a possible head injury, Kuntz went to a local medical center. Only following a brain scan was Kuntz flown to a trauma center. His condition was beyond repair:

> A neurosurgeon evaluated Kuntz, who was on a ventilator and had no brain stem reflexes. The doctor concluded that Kuntz had a very large subdural hematoma that had caused irreversible brain damage. He added that Kuntz's low body temperature had exacerbated his condition because it interfered with normal clotting. Kuntz died when he was removed from the ventilator two days later.

> Several doctors testified at trial that Kuntz's head injuries were consistent with blunt force trauma, and that such injuries are generally treatable if medical attention is sought in the first hours after a brain injury. It was also explained that within an hour of injury a person with a subdural hematoma

4

would start to experience a progression of symptoms such as dizziness, headache, nausea, vomiting, sleepiness, lethargy, and eventually unresponsiveness.

*Id.* at 517–518 (footnote omitted).

B.

A federal grand jury indicted Marlowe and other officers for depriving detainees and prisoners of their rights secured by the Constitution or laws of the United States in violation of 18 U.S.C. § 242 and conspiring to do so in violation of 18 U.S.C. § 241. Counts Two and Three charged Marlowe in Kuntz's death. Count Two encompassed the assault, while Count Three faulted Marlowe for depriving Kuntz of necessary medical care. Both arose under 18 U.S.C. § 242, which authorizes escalating penalties depending on the resulting harm: "if bodily injury results from the acts committed in violation of" the statute, the maximum sentence is 10 years' imprisonment, but "if death results from the acts," the defendant may be sentenced to life imprisonment.[1] Counts Two and Three each alleged that Marlowe's actions resulted in both Kuntz's bodily injury and his death.

---

[1] In full, 18 U.S.C. § 242 provides:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both;

5

While some of his codefendants pleaded guilty (and testified against him), Marlowe opted for trial. At the close of evidence, the district court instructed the jury on the "death results" element in Counts Two and Three:

> For Counts Two and Three, you also must decide whether the government has proved beyond a reasonable doubt that Walter Kuntz's death resulted from the conduct of Defendant Marlowe.

> The government need only prove that bodily injury or death was a natural and foreseeable result of the defendant's conduct. The government does not need to prove that a defendant intended to cause bodily injury or death or that a defendant's acts were the direct, immediate or sole cause of bodily injury or death.

J.A. 46–47. The jury convicted Marlowe of seven of the eight counts charged. On Count Two, the jury found Marlowe guilty and that bodily injury—but not death—resulted from the assault on Kuntz. On Count Three, the jury found Marlowe guilty and that both bodily injury and death resulted from withholding medical care. The court sentenced Marlowe to life imprisonment on Count Three and concurrent sentences of 10 years on the other counts. Without challenging his convictions, Marlowe appealed only the life sentence, which the Sixth Circuit affirmed. *Conatser*, 514 F.3d at 528.

In 2009, Marlowe moved to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255. He claimed that his trial counsel rendered constitutionally ineffective representation by failing to correctly calculate and advise him of his sentencing

---

and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

exposure and to recommend that he accept the Government's plea offer. The district court denied the motion and declined to issue a certificate of appealability, as did the Sixth Circuit.

C.

In July 2017, Marlowe filed the 28 U.S.C. § 2241 habeas petition underlying this appeal.[2] In support, Marlowe invokes the Supreme Court's 2014 decision in *Burrage v. United States*, 571 U.S. 204 (2014). There, the Supreme Court interpreted a statute imposing a 20-year mandatory minimum sentence for drug offenses where "death or serious bodily injury results from the use of [the illegal] substance." 21 U.S.C. § 841(b)(1)(C); *see also Burrage*, 571 U.S. at 208–210. The Court held that the "death results" element requires a showing of but-for causation. *Burrage*, 571 U.S. at 218–219. The Court embraced the traditional understanding reflected in the Model Penal Code that "when a crime is defined in terms of conduct causing a particular result," it at a minimum requires that the conduct be "an antecedent but for which the result in question would not have occurred." *Id.* at 211 (quoting ALI, Model Penal Code § 2.03(1)(a) & Explanatory Note (1985)).

Marlowe contends that the jury instructions in his case ran afoul of *Burrage* because the jury was not asked to decide whether Kuntz would have lived but for Marlowe's

---

[2] Though Marlowe was convicted in the Middle District of Tennessee, he is serving his sentence at Federal Correctional Institution, Hazelton in West Virginia. Because Section 2241 habeas petitions "must be filed in the jurisdiction where the federal petitioner is detained," Marlowe's appeal is properly before this Court. *Hahn v. Moseley*, 931 F.3d 295, 300 (4th Cir. 2019); *see also* 28 U.S.C. § 2241(a).

conduct but rather was instructed that Marlowe's acts need not have been "the direct . . . cause" of Kuntz's death. The Government moved to dismiss the petition for lack of jurisdiction, arguing that Marlowe was not entitled to invoke Section 2241 because he had not shown, pursuant to the so-called "savings clause" of 28 U.S.C. § 2255(e), that a Section 2255 motion would be "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *see also In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997) (en banc) (federal prisoners "are required to bring collateral attacks challenging the validity of their judgment and sentence by filing a motion to vacate sentence pursuant to [Section] 2255").

The district court granted the motion to dismiss. *Marlowe v. Warden, FCI Hazelton*, No. 5:17-CV-111, 2020 WL 2043807 (N.D. W. Va. Apr. 28, 2020). The court recognized that, when evaluating claims under the savings clause, it must apply the procedural law of this Circuit and the substantive law of the circuit where the petitioner was convicted. Looking to the law of the Sixth Circuit, the district court observed that the circuit has applied *Burrage* retroactively on collateral review. *Id.* at *3–4. The court also observed that the Sixth Circuit's savings-clause jurisprudence requires a prisoner to prove he is "actually innocent," meaning that applying the retroactive rule "make[s] it more likely than not that no reasonable juror would have convicted him." *Id.* at *5 (citing *Harrington v. Ormond*, 900 F.3d 246, 249 (6th Cir. 2018)). Thinking it would be incongruous for Marlowe to escape this requirement by virtue of being confined in the Fourth Circuit, the district court determined that Marlowe "should be required to show the actual innocence standard of the Sixth Circuit." *Id.* Marlowe failed to make that showing, the district court reasoned, because (1) even extending *Burrage* to 18 U.S.C. § 242, the jury instructions

8

were correct and (2) the evidence and verdict demonstrated that Marlowe's withholding of medical care was the sole proximate cause of Kuntz's death. *Id.* at *6–7.

Marlowe timely appealed. He contends that after *Burrage* the causation jury instruction in his case was fatally flawed and the district court further erred by requiring him to satisfy the Sixth Circuit's actual-innocence standard. The Government urges us to affirm the district court's reasoning but also emphasizes that no binding precedent from the Sixth Circuit or the Supreme Court foreclosed Marlowe—at trial, on direct appeal, or in his initial Section 2255 motion—from making the argument he now attempts to advance.

## II.

Marlowe bears the burden to establish the inadequacy or ineffectiveness of 28 U.S.C. § 2255 so that he may proceed with his Section 2241 habeas petition. *Farkas v. Butner*, 972 F.3d 548, 553 (4th Cir. 2020). Whether he has done so is a jurisdictional question we review de novo. *Ham v. Breckon*, 994 F.3d 682, 688 (4th Cir. 2021).

## A.

Federal prisoners generally must use the remedy-by-motion mechanism provided in 28 U.S.C. § 2255 to challenge their convictions or sentences. *Farkas*, 972 F.3d at 554; *In re Vial*, 115 F.3d at 1194. Section 2255 "afford[s] every federal prisoner the opportunity to launch at least one collateral attack to any aspect of his conviction or sentence." *Prost v. Anderson*, 636 F.3d 578, 583 (10th Cir. 2011) (Gorsuch, J.). But after a prisoner, like Marlowe, has filed one unsuccessful Section 2255 motion, "he may not file another except under very limited circumstances." *Lester v. Flournoy*, 909 F.3d 708, 710 (4th Cir. 2018). Specifically, before filing a "second or successive motion," the prisoner must receive

permission from the court of appeals by making a prima facie showing that either (1) "newly discovered evidence" proves he was not guilty of his offense or (2) a "previously unavailable" "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," entitles him to relief. 28 U.S.C. § 2255(h); *see also id.* § 2244(b). These restrictions do not permit a second petition for a new statutory construction, like Marlowe advances here. *See Lester*, 909 F.3d at 711.

Congress has provided one exception to this general rule. Section 2255(e)'s savings clause permits a prisoner to file a traditional Section 2241 habeas petition if it "appears that the [Section 2255] remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). The Section 2255 remedy "is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision, or because an individual is procedurally barred from filing a [Section] 2255 motion." *In re Vial*, 115 F.3d at 1194 n.5 (internal citations omitted). Nevertheless, our Court has held that, in "limited circumstances," a prisoner otherwise unable to file a second or successive Section 2255 petition may invoke the savings clause to seek relief under Section 2241. *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000). "[T]o prevent the exception from swallowing the rule" and "'effectively nullify[ing]'" Section 2255's limitations, "we have interpreted the 'savings clause' narrowly." *Farkas*, 972 F.3d at 556 (quoting *In re Jones*, 226 F.3d at 333).

Our Circuit has crafted a three-part test for determining whether a Section 2255 motion challenging a prisoner's conviction would prove "inadequate or ineffective."[3] That test provides that Section 2255 is inadequate and ineffective to test the legality of a conviction when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first [Section] 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of [Section] 2255 because the new rule is not one of constitutional law.

*In re Jones*, 226 F.3d at 333–334. To resolve Marlowe's appeal, we need undertake only the first inquiry. Before doing so, however, we must define its substance.

## B.

We have not previously had occasion to squarely address the meaning of our requirement that the "settled law of this circuit or the Supreme Court established the legality of the [prisoner's] conviction." *Id.* After reviewing *Jones*, cases applying its standard, and the statutory scheme governing habeas proceedings, we conclude that the first step of the *Jones* test requires a prisoner invoking Section 2255(e)'s savings clause to demonstrate that, at the time of his conviction, binding precedent from the Supreme Court or the circuit of conviction foreclosed the argument he contends entitles him to habeas relief.

---

[3] Our Court has created a similar pathway for relief under the savings clause for prisoners who challenge the legality of their sentences. *See United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018). *Jones* controls here because Marlowe disputes the validity of his conviction, not "the length of a criminal sentence for an otherwise valid conviction." *Farkas*, 972 F.3d at 559–560.

11

1.

We begin with *Jones*. Byron Jones had been convicted of violating 18 U.S.C. § 924(c)(1). At the time of his conviction, our cases allowed the Government to establish "use" of a firearm under Section 924(c)(1) "by proving that 'the firearm was present for protection and to facilitate the likelihood of success [of a drug trafficking offense], whether or not it was actually used.'" *In re Jones*, 226 F.3d at 330 (alterations omitted) (quoting *United States v. Paz*, 927 F.2d 176, 179 (4th Cir. 1991)). Roughly two years later, the Supreme Court in *Bailey v. United States*, 516 U.S. 137 (1995), held that the Government "must prove active employment of a firearm in order to convict under the 'use' prong of [Section] 924(c)(1)." *In re Jones*, 226 F.3d at 330. As we explained, "[t]his holding overruled the prior law of this circuit," under which Jones had been convicted. *Id.*

Evaluating the meaning of the savings clause in this circumstance, we examined similar decisions from other circuits. In each case, "the court . . . noted that the prisoner's first [Section] 2255 motion was filed prior to the decision in *Bailey*, at a time when *it would have been futile* to challenge the then-prevailing interpretation of the 'use' prong of [Section] 924(c)(1)" in those circuits. *Id.* at 333 (emphasis added) (citing *In re Davenport*, 147 F.3d 605, 610–612 (7th Cir. 1998); *Triestman v. United States*, 124 F.3d 361, 376–380 (2d Cir. 1997); *In re Dorsainvil*, 119 F.3d 245, 251–252 (3d Cir. 1997)).[4] This Court

---

[4] In a footnote, the Court also cited *Wofford v. Scott*, 177 F.3d 1236 (11th Cir. 1999), *overruled by McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017). That decision did not involve a *Bailey* claim but relied on the reasoning of those cases to fashion a savings-clause test requiring, among other things, that "circuit law squarely foreclosed" the claim "at the time it otherwise should have been raised in the petitioner's trial, appeal, or first [Section] 2255 motion." *Wofford*, 177 F.3d at 1244.

"agree[d] with the rationale and holdings of th[o]se courts" and accordingly established the three-part test we use today. *Id.* Applying the first requirement of that test, the *Jones* Court explained that "[u]nder the settled law of this circuit at the time of Jones'[s] conviction," the discovery of four firearms in a locked closet was sufficient to support a conclusion that Jones "used" the guns for purposes of Section 924(c)(1). *Id.* at 334. In other words, before *Bailey*, circuit precedent foreclosed any argument by Jones that Section 924(c)(1) required active employment of a firearm.

This context informs our understanding of *Jones*'s requirement that "settled law" at the time of the prisoner's conviction "established the legality of the conviction." *Id.* at 333–334. The law was settled and adverse to the prisoners in *Jones* and the cases on which it relied because, at the time of their convictions, binding precedent foreclosed the statutory interpretation they later claimed undercut the legality of their convictions. In view of circuit precedent definitively interpreting the "use" prong of Section 924(c)(1) at the time of his conviction, it "would have been futile" for Jones to advance a contrary interpretation of the statute. *Id.* at 333. *Jones* is thus premised on the understanding that binding precedent previously prevented the prisoner from asserting the argument he later claims a change in the law has made available to him.

2.

Subsequent cases reinforce this interpretation. For example, in *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), this Court relied on *Jones* to fashion a savings-clause test for challenges to sentences. Convicted of various drug and firearm offenses, Wheeler faced an enhanced statutory mandatory minimum of 10 years' imprisonment

13

based on a prior North Carolina felony drug offense. *Wheeler*, 886 F.3d at 419. When Wheeler was sentenced, our precedent held that "to determine whether a conviction is for a crime punishable by a prison term exceeding one year under North Carolina law, we consider the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." *Id.* at 420 (alterations omitted) (quoting *United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005)). Though Wheeler himself could have received only 6 to 8 months' imprisonment for his North Carolina conviction, the offense carried a maximum aggravated sentence of 15 months. *Id.* So "any challenge" arguing that Wheeler's North Carolina conviction was not a felony drug offense "would have failed." *Id.* (alterations and internal quotation marks omitted). We later overruled *Harp*, holding instead that "a sentencing court may only consider the maximum possible sentence that the *particular* defendant could have received." *Id.* (quoting *United States v. Kerr*, 737 F.3d 33, 37 (4th Cir. 2013)).

The *Wheeler* Court adapted *Jones*'s first requirement to focus on a prisoner's sentence rather than conviction, requiring that "at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence." *Id.* at 429. And we found Wheeler satisfied this requirement. It was "undisputed that at the time [Wheeler] was sentenced in February 2008, his sentence was legal pursuant to *Harp*." *Id.* Just as in *Jones*, published circuit precedent at the time foreclosed the argument Wheeler made in his subsequent habeas proceeding.

So too in other cases. In *Lester v. Flournoy*, 909 F.3d 708 (4th Cir. 2018), we held Section 2255 inadequate and ineffective under the *Wheeler* test, finding that when Lester

14

was sentenced, "settled precedent established that his past conviction for walkaway escape was a 'crime of violence'" under the Guidelines' career-offender provision. 909 F.3d at 712. In *Braswell v. Smith*, 952 F.3d 441 (4th Cir. 2020), we found that, just as in *Wheeler*, settled law established the validity of the prisoner's sentence because the felony drug offense enhancement was controlled by "[t]he then-prevailing decision of *United States v. Harp*." 952 F.3d at 447. In *Jones v. Zych*, 812 Fed. App. 115 (4th Cir. 2020), the first *Wheeler* requirement was satisfied because Supreme Court precedent permitting judicial factfinding as the basis for a statutorily increased mandatory minimum was "the law of the land at the time of Jones's sentencing." 812 Fed. App. at 120–121. And in *Hahn v. Moseley*, 931 F.3d 295 (4th Cir. 2019), we found *Jones*'s "settled law" requirement fulfilled where, at the time of Hahn's convictions, Tenth Circuit law held—contrary to later developments—that multiple charges under Section 924(c) based on a single instance of firearm possession were permissible if they did not contravene the Double Jeopardy Clause. 931 F.3d at 301.

Our consistent treatment of *Jones*'s first requirement and its *Wheeler* analog evinces a focus on whether settled law at the time of the original criminal proceedings foreclosed the argument the prisoner later advances to challenge his conviction or sentence such that raising it earlier was or would have been futile.

3.

This reading of *Jones*'s "settled law" requirement is also consonant with Section 2255 and the nature of the habeas remedy. Generally speaking, habeas proceedings are not the time to raise arguments a prisoner could have made, but did not, in the proceedings

15

culminating in his conviction. Principles of procedural default sharply limit a prisoner's ability to raise on collateral review claims not raised in his initial criminal proceeding or on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621–624 (1998); *United States v. Frady*, 456 U.S. 152, 167–168 (1982); *see also United States v. Harris*, 991 F.3d 552, 558 (4th Cir. 2021). And the gatekeeping provisions of Section 2255(h) limit second or successive Section 2255 motions to "newly discovered evidence" and "new rule[s] of constitutional law" that were "previously unavailable." 28 U.S.C. § 2255(h); *see also Lester*, 909 F.3d at 710–711. The exclusion of previously available claims from Section 2255's reach compels a similar approach to the savings clause. *See Farkas*, 972 F.3d at 556 (explaining that we have interpreted the savings clause "narrowly" in an effort to avoid "effectively nullify[ing] [Section] 2255's specific limitations" (internal quotation marks omitted)).

The text of the savings clause points in the same direction. As we have observed, "the text juxtapos[es] the terms 'inadequate or ineffective' with the phrase 'to test the legality of [a prisoner's] detention.'" *Id.* at 555 (internal quotation marks omitted). At a minimum, Section 2255 is not inadequate or ineffective to test an argument on an unsettled point of law that the prisoner could have asserted in his original criminal proceeding, on direct appeal, or in his initial Section 2255 motion. *Cf. Wheeler*, 886 F.3d at 429 (requiring that retroactive change in law occur after direct appeal and initial Section 2255 motion to "honor[] the saving clause's requirement that the [Section] 2255 motion be inadequate or ineffective"). Section 2255 would not condone a prisoner's failure to press his argument earlier, and "[i]t is beyond question that [Section] 2255 is not inadequate or ineffective

merely because an individual is unable to obtain relief under that provision." *In re Jones*, 226 F.3d at 333; *see also Farkas*, 972 F.3d at 555–556. The savings clause "provide[s] only the tightest alleyway to relief." *Lester*, 909 F.3d at 716. And in our Circuit, traversing that alleyway begins with showing that, at the time of the prisoner's original criminal proceeding, binding precedent foreclosed the argument he later seeks to advance in his Section 2241 petition.

C.

With the proper inquiry in mind, we now undertake it in Marlowe's case. When evaluating claims under the savings clause, "we look to the substantive law of the circuit where a defendant was convicted." *Hahn*, 931 F.3d at 301. Because Marlowe was convicted in the Middle District of Tennessee, we assess the "settled law" of the Sixth Circuit and Supreme Court. *See id.* at 301–302 (applying *Jones* and evaluating whether settled Tenth Circuit law established the legality of the conviction).

In his Section 2241 petition, Marlowe contends that the law in the Sixth Circuit at the time of his January 2006 conviction did not require a showing of but-for causation to support a conviction under the "death results" enhancement of 18 U.S.C. § 242, citing *United States v. Martinez*, 588 F.3d 301 (6th Cir. 2009). Though *Martinez* issued after his conviction and direct appeal—and does not involve a conviction under 18 U.S.C. § 242— Marlowe nonetheless claims that "the Court in *Martinez* was clear that since 1994 it has interpreted a similar statutory provision as only requiring a showing of legal cause." J.A. 16 n.2. This references *Martinez*'s discussion of *United States v. Wiegand*, No. 93-1735, 1994 WL 714347 (6th Cir. Dec. 22, 1994), an unpublished decision that addressed the

17

causation necessary to show that "bodily injury results" from a violation of 42 U.S.C. § 3631. Citing approvingly to a Fifth Circuit decision construing 18 U.S.C. § 242, the *Wiegand* court upheld the enhanced punishment under 42 U.S.C. § 3631 because the bodily injury that occurred was the natural and foreseeable result of the defendant's statutory violation. *Wiegand*, 1994 WL 714347, at *2–3.

These cases cannot carry Marlowe's burden to show that binding precedent at the time of his conviction foreclosed an argument that the "death results" enhancement of 18 U.S.C. § 242 requires but-for causation. Most fundamentally, *Martinez* specifically says—years after Marlowe's conviction—that the Sixth Circuit "ha[s] not interpreted the 'results in death' language of [Section] 242." 588 F.3d at 318. The law concerning 18 U.S.C. § 242's causation standard could hardly be "settled" if the Sixth Circuit has never interpreted it.

Moreover, in addition to interpreting a different statute, *Wiegand* is an unpublished opinion. At the time of Marlowe's trial (as now) it was "well-established law" in the Sixth Circuit "that unpublished cases are not binding precedent." *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002). A nonprecedential decision interpreting a different statute cannot establish "settled law." *Cf. Ham*, 994 F.3d at 693 (rejecting the argument that an "unpublished, non-precedential decision" could "demarcate a change in settled law").

Marlowe could have raised his current objection to the causation jury instruction at trial. He has not shown that doing so "would have been futile" under binding Sixth Circuit precedent. *In re Jones*, 226 F.3d at 333. He therefore has not satisfied the first requirement of the *Jones* test for invoking the savings clause of Section 2255(e).

18

## III.

The traditional Section 2241 habeas remedy is available to a federal prisoner only if a Section 2255 motion is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Under this Court's precedent, a Section 2255 motion can prove inadequate or ineffective only if, among other things, at the time of his conviction the settled law of the Supreme Court or the circuit in which the prisoner was convicted established the legality of his conviction. To satisfy this requirement, a prisoner must show that binding precedent foreclosed the argument he later presses to collaterally attack his conviction. Because Marlowe cannot satisfy this requirement to access Section 2255's savings clause, the district court lacked jurisdiction to entertain his Section 2241 habeas petition. The judgment of the district court dismissing Marlowe's petition is

*AFFIRMED*.